Filed 5/23/13  In re J.T. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.T., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E056769 |
| Plaintiff and Respondent, | (Super.Ct.No. INJ020993) |
| v. | O P I N I O N |
| K.T., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Lawrence P. Best, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Mitchell Keiter, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel, and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

## I. INTRODUCTION

Defendant and appellant, K.T. (Mother), appeals from May 16, 2012, orders terminating parental rights to Mother's fourth child, J.T., a girl born in July 2010, and placing J.T. for adoption. (Welf. & Inst. Code, § 366.26.)[1] Mother does not challenge the propriety of the order terminating parental rights or placing J.T. for adoption. Instead, Mother claims that the juvenile court reversibly erred in failing to consider placing J.T. with J.T.'s maternal aunt, T.T. (Aunt), at the time of the May 16, 2012, section 366.26 hearing, or in June 2011 when J.T. needed a new placement. (§ 361.3.)

We reject Mother's challenge to the order refusing to consider Aunt for placement or to place J.T. with Aunt because Mother has no standing to challenge that order. Mother does not claim that the failure to place J.T. with Aunt, at any time, had or would have had any bearing on the court's decision to terminate parental rights. Thus, Mother is not aggrieved by the court's refusal to consider Aunt for placement. (*In re K.C.* (2011) 52 Cal.4th 231, 238-239 (*K.C.*) [parent lacks standing to challenge placement order on appeal when parent does not claim the order had any bearing on court's decision to terminate parental rights].)

## II. BACKGROUND

J.T. was born in July 2010 and was taken into protective custody only two days after her birth. Mother tested positive for methamphetamine upon her admission to the

---

**1** All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

hospital, refused to comply with hospital directives concerning J.T.'s care, and handled J.T. in a way that could have injured her. Mother previously lost custody of three older children due to her ongoing substance abuse, and the older children were living in different placements.

When J.T. was taken into protective custody in July 2010, Mother's oldest child, K., was in a permanent placement with a maternal uncle in Modesto. Mother's second oldest child, A., was in another permanent placement in Sacramento, and her third oldest child, T., was living with Aunt in Fresno. Aunt desired to adopt T., and plaintiff and respondent, Riverside County Department of Public Social Services (DPSS), was seeking to terminate parental rights to T. and place T. for adoption. The social worker for J.T. promptly contacted Aunt and asked her whether she "and her family" would be interested in the placement of J.T. Aunt was "understandably upset," and asked that she be allowed "time to think about it and discuss it with her family." The August 4, 2010, detention report states that DPSS was likely to have an answer from Aunt before the jurisdictional/dispositional hearing for J.T. J.T. was initially placed in foster care.

On August 25, 2010, the maternal grandmother (Grandmother) told the social worker that she would like to be considered for placement of J.T. On September 22, the court declared J.T. a dependent based on Mother's substance abuse and neglect, and the alleged father's failure to provide.[2] (§ 300, subds. (b), (g).) The court denied

---

[2] At the August 4, 2010, detention hearing, Mother identified G.P. as J.T.'s alleged father. A paternity test showed that G.P. was not J.T.'s biological father.

3

reunification services to Mother based on her failure to reunify with and loss of parental rights to her older children (§ 361.5, subd. (b)(10), (b)(11)), and ordered J.T. removed from Mother's care.[3] Mother "made it clear" that she was not interested in services "or even visiting with" J.T. J.T. was continued in foster care, and review and selection and implementation hearings were scheduled for January 20, 2011.

On January 20, 2011, DPSS was in the process of considering Grandmother for placement. Grandmother had been visiting J.T. and wanted to adopt her. The delay in assessing Grandmother for placement since August 2010 was due to Grandmother's delay in providing DPSS with fingerprints for a background check, and in moving her residence. Grandmother moved because her residence was deemed "not appropriate for an infant." Grandmother's hospitalization further delayed the process. The selection and implementation hearing was continued so that DPSS could complete its assessment of Grandmother and her home for placement.

By July 2011, DPSS concluded that Grandmother's failure to schedule a "live scan" background check and home assessment precluded placing J.T. with her. At that time, DPSS reported that there were "no other relatives to consider for placement" and that J.T.'s current caretakers, Mr. and Mrs. B., with whom J.T. was placed on June 8, 2011, were willing to adopt her. Mr. and Mrs. B. were bonded to J.T. and had known her since her birth, having served as her respite caregivers for the original foster parents.

---

[3] Mother's parental rights to her third oldest child, T., were also terminated on September 22, 2010, and T. was placed for adoption.

Also in July 2011, DPSS reported that two of J.T.'s siblings had been adopted by different relatives, and that these relatives were asked whether they were interested in adopting J.T., but both said they were not interested in adopting J.T. The report did not identify which of J.T.'s siblings had been adopted or by whom. Then, in November 2011, DPSS reported that Grandmother had only visited J.T. twice during 2011, and that no other relatives (including Aunt) had ever visited J.T. The report stated: "Unfortunately [the] biological family seems to have other priorities in their lives that prevent them [from] visiting [J.T.]"

In a February 21, 2012, section 366.26 report, DPSS reported that its adoptions unit had contacted Aunt, that Aunt now wanted to adopt J.T., and that Aunt was requesting placement of J.T. It was also noted that Aunt had been contacted on August 6, 2010, and at that time said she could not take J.T. because she was "having difficulties with just the one child [T.]" and felt she could not "take . . . on" another child. Aunt had now "changed her mind," however, and wanted to provide J.T. with the permanency of adoption.

In a January 26, 2012, entry in the DPSS service log, the social worker noted that Aunt was now willing to adopt J.T., and her interest in J.T. was "just discovered." On the same date, the social worker discussed Aunt's interest in J.T. with Mrs. B. Mrs. B. felt that she should be able to adopt J.T., given the amount of time J.T. had been in her care. Additional service log entries from January 2012 show that DPSS was assessing Aunt's Fresno home for placement at that time.

5

Thus, in its February 21, 2012, section 366.26 report, DPSS requested a further continuance of the selection and implementation hearing, then set for March 5, in order to "finalize" J.T.'s permanent plan. The report explained that when the adoptions unit received the adoption packet from Mr. and Mrs. B., they realized that Aunt had just adopted T. and contacted Aunt "once more regarding the placement of [J.T.]." Aunt felt that T. and J.T. should be together, and DPSS was "expediting the assessment process to clear [Aunt's] home" in order to place J.T. with Aunt as soon as possible.

Then, on February 28, 2012, a new social worker was assigned to the case, and DPSS determined that it was in the best interest of J.T. to stay in her placement with Mr. and Mrs. B. In a May 8 addendum report, DPSS noted that although Aunt had adopted T., Aunt had never visited J.T., and J.T. was not bonded with her biological family, who were "strangers to her." DPSS again noted that Aunt had declined to take custody of J.T. at the inception of the proceedings in August 2010. J.T. was nearly 22 months old in May 2012, and was bonded with Mr. and Mrs. B. Accordingly, DPSS recommended that J.T. be adopted by Mr. and Mrs. B.

At the continued selection and implementation hearing on May 16, 2012, the court terminated parental rights and placed J.T. for adoption. Prior to the hearing, Aunt and other family members wrote letters to the court protesting DPSS's refusal to consider Aunt for placement, and on March 9, Aunt's home was approved for placement. Mother's counsel asked the court to place J.T. with Aunt and allow Aunt, rather than Mr. and Mrs. B., to adopt J.T.

6

Counsel for J.T. told the court that "the best scenario" would have been to place J.T. with Aunt at an earlier date, but now that J.T. had been with Mr. and Mrs. B. for so many months and was nearly two years old, her best interests would be served by keeping her in her current placement. The court agreed and noted that: "To change the placement would not be in the best interest of the child and, in my opinion, would be detrimental. So whether what was done before was right or wrong . . . it is clearly in this child's best interest to remain in the current placement. . . ."

Mother, Aunt, and Grandmother each filed notices of appeal from the March 16, 2012, orders. This court dismissed the appeals of Aunt and Grandmother on the grounds that their notices of appeal did not indicate that they were parties or had standing to appeal. (*In re Miguel E.* (2004) 120 Cal.App.4th 521, 539.) Grandmother's appeal was also untimely. Mother's appeal was allowed to proceed, and only Mother filed an opening brief on appeal.

## III. DISCUSSION

Mother claims the juvenile court reversibly erred in rejecting her request to place J.T. with Aunt at the May 16, 2012, section 366.26 hearing, and further erred in rejecting documents Mother submitted at the hearing showing Aunt's attempts to gain placement of J.T. We reject these claims because Mother had no standing to challenge the May 16, 2012, order refusing to place J.T. with Aunt. (*K.C., supra,* 52 Cal.4th at pp. 236-237.)

We begin by outlining the relative placement preference. "The relative placement preference, codified in section 361.3, provides that whenever a new placement of a

dependent child must be made, preferential consideration must be given to suitable relatives who request placement. (§ 361.3, subds. (a), (d).) "'Preferential consideration" means that the relative seeking placement shall be the first placement to be considered and investigated.' (§ 361.3, subd. (c)(1).) Preferential consideration 'does not create an evidentiary presumption in favor of a relative, but merely places the relative at the head of the line when the court is determining which placement is in the child's best interests.' [Citation.]" (*In re Antonio G.* (2007) 159 Cal.App.4th 369, 376.) Thus, section 363.1 "'express[es] a command that relatives be assessed and *considered* favorably, subject to the juvenile court's consideration of the suitability of the relative's home and the best interests of the child.' [Citations.]" (*In re Antonio G., supra,* at p. 377.)

Mother claims the court had a duty to preferentially consider Aunt for placement when J.T. needed a new placement in June 2011, after J.T.'s "possible placement with Grandmother fell through" and J.T. was placed with Mr. and Mrs. B. In sum, Mother argues that DPSS and the court "failed to consider Aunt [for placement] as required by law." Consequently, Mother argues that the May 16, 2012, order terminating parental rights must be reversed and the matter remanded to the juvenile court with directions "to hold a contested hearing in which Mother, Aunt and J.T. may be heard as to their placement requests."

The threshold question we must determine is not whether DPSS or the court erred in failing to consider Aunt for placement in June 2011 or on May 16, 2012, but whether Mother has *standing* to claim that the court erred in refusing to consider Aunt for

8

placement, at any time. "'[W]hether one has standing in a particular case generally revolves around the question whether that person has rights that may suffer some injury, actual or threatened.' [Citation.]" (*Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1034-1035.) Thus, a parent in a juvenile dependency proceeding may not raise claims of error on appeal unless the error affected the parent's "own rights." (*In re Jasmine J.* (1996) 46 Cal.App.4th 1802, 1806.)

When, as here, reunification services have been terminated or bypassed (here, they were bypassed at the September 22, 2011, dispositional hearing), the parent's interest in the care, custody and companionship of the child is no longer paramount. Rather, at this point the focus shifts to the needs of the child for permanency and stability. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) And when, as here, a parent does not claim that his or her parental rights were improperly terminated, the parent has no "remaining, legally cognizable interest" in the child's affairs, including the child's placement. (*K.C., supra,* 52 Cal.4th at p. 237.) Thus here, Mother has no legally cognizable interest in J.T.'s placement, and as a result has no standing to challenge the May 16, 2012, order refusing to consider Aunt for placement.

The *K.C.* court summarized the applicable rule as follows: "A parent's appeal from a judgment terminating parental rights confers standing to appeal an order concerning the dependent child's placement *only if the placement order's reversal advances the parent's argument against terminating parental rights.*" (*K.C., supra,* 52 Cal.4th at p. 238, italics added.) In *K.C.*, the father had no standing to appeal an order

denying a petition by the dependent child's grandparents to have the child placed with them because the father did not contest the termination of his parental rights in the juvenile court. (*Ibid.*) "By thus acquiescing in the termination of his rights, he relinquished the only interest in K.C. that could render him aggrieved by the juvenile court's order declining to place the child with grandparents." (*Ibid.*, fn. omitted.)

Here too, Mother acquiesced in the termination of her parental rights. She makes no claim that her parental rights were erroneously terminated, or that the failure to consider Aunt for placement or place J.T. with Aunt had any potential to alter the court's decision to terminate Mother's parental rights. Mother is thus not aggrieved by DPSS's or the court's refusal to consider Aunt for placement, or place J.T. with Aunt, and has no standing to challenge DPSS's or the court's refusal to consider placing J.T. with Aunt. (*K.C., supra,* 52 Cal.4th at p. 238; *In re Jasmine J., supra,* 46 Cal.App.4th at p. 1804.)

*In re H.G.* (2006) 146 Cal.App.4th 1 and *In re Esperanza C.* (2008) 165 Cal.App.4th 1042 are distinguishable. As explained in *K.C.*, the parents in these cases, "were aggrieved by, and thus *did* have standing to appeal, pretermination orders concerning their children's placement, because the possibility existed that reversing [the placement] orders might [have led] the juvenile court not to terminate parental rights." (*K.C., supra,* 52 Cal.4th at pp. 237-238.) But like the father in *K.C.*, Mother does not claim that reversal of the court's May 16, 2012, order refusing to consider Aunt for placement or place J.T. with Aunt would have any bearing on the court's decision to terminate parental rights.

10

To be sure, and as Mother points out, the "placement of a child with a relative has the potential to alter the juvenile court's determination of the child's best interests and the appropriate permanency plan for that child, and may affect a parent's interest in his or her legal status with respect to the child." (*In re Esperanza C., supra,* 165 Cal.App.4th at p. 1054.) But Mother's suggestion that the juvenile court would have selected guardianship over adoption as J.T.'s permanent plan (thus preserving parental rights) had J.T. been placed with Aunt as early as June 2011, is based on pure speculation.

## IV. DISPOSITION

The May 16, 2012, orders refusing to consider Aunt for placement, terminating parental rights, and placing J.T. for adoption, are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING

J.

We concur:

RICHLI

       Acting P.J.

MILLER

       J.